**ANR PIPELINE COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION.**

Nos. 87–1340, 88–1030.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 3, 1988.

Decided Dec. 13, 1988.

William W. Brackett with whom Daniel F. Collins, and Richard W. Miller, Jr., Washington, D.C., were on the brief, for petitioner.

Robert H. Solomon, Atty., F.E.R.C., with whom Catherine C. Cook, Gen. Counsel, Jerome M. Feit, Sol., Joseph S. Davies and Joanne Leveque, Attys., F.E.R.C., Washington, D.C., were on the brief, for respondent.

Bruce F. Kiely and Mark C. Schroeder, Washington, D.C., for City Gas Co., et al. Steven M. Schur, Madison, Wis., and Philip J. Mause, Washington, D.C., for Public Service Com'n of Wisconsin. Richard M. Merriman, John R. Schaefgen, Jr., and Stephen L. Huntoon, Washington, D.C., for Michigan Gas Utilities Co. Frank J. Kelley, Detroit, Mich., Louis J. Caruso, Don L. Keskey, Lansing, Mich., and Patricia S. Barone, for State of Michigan and the Michigan Public Service Com'n. Jeffrey M. Petrash and James H. Holt, for Michigan Consolidated Gas Co. Glen S. Howard, Washington, D.C., for Ass'n of Businesses Advocating Tariff Equity. Ned Willis, Perry, Iowa, for North Cent. Public Service Co. entered an appearance for City Gas Co., et al.

Gail S. Gilman, Washington, D.C., entered an appearance for intervenor, Ass'n of Businesses Advocating Tariff Equity.

Before RUTH BADER GINSBURG, SILBERMAN, and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge RUTH BADER GINSBURG.

RUTH BADER GINSBURG, Circuit Judge:

In a December 1986 opinion and order, designated Opinion No. 258, the Federal

Energy Regulatory Commission (FERC or Commission) determined that petitioner ANR Pipeline Company (ANR) should no longer retain its minimum bill (billing for volumes not in fact taken by the customer) for sales of natural gas. *ANR Pipeline Co.*, 37 F.E.R.C. ¶ 61,263 (1986), *reh'g denied*, 38 F.E.R.C. ¶ 61,221 (1987). ANR, which also used the minimum bill quantity in calculating its rates, replaced that no-longer-valid figure with one reflecting actual sales volumes. In other words, it eliminated the minimum bill altogether. The instant case concerns the revised tariff sheets ANR submitted in asserted compliance with Opinion No. 258. In those sheets, ANR made two adjustments relevant here: (1) it eliminated all tariff language under which it had billed certain customers for minimum quantities of natural gas; and (2) it made a corresponding adjustment to remove the reflection of those minimum quantities in the calculation of its rates.

FERC rejected the rate adjustment as in conflict with Opinion No. 258 and with the filed rate doctrine. *ANR Pipeline Co.*, 39 F.E.R.C. ¶ 61,232, *reh'g denied*, 40 F.E.R.C. ¶ 61,067 (1987). ANR seeks our review of that rejection. Because the Commission has not satisfied us of the rationality of its orders rejecting ANR's rate adjustment, we grant ANR's petition, vacate the orders under review, and remand the case to the Commission for further proceedings.

## I.

ANR owns and operates an interstate natural gas pipeline system that sells natural gas for resale to local distribution companies primarily in Michigan and Wisconsin. Its largest customer, accounting for about 45 percent of ANR's sales, is Michigan Consolidated Gas Company (MichCon).

Pursuant to the Natural Gas Act (NGA), 15 U.S.C. § 717c (1982), and the Department of Energy Organization Act, 42 U.S.C. § 7172(a)(1)(C) (1982), all of ANR's sales are subject to FERC's authority, and the Commission is charged with assuring that ANR's rates are "just and reasonable."

ANR sells gas under rate schedules that contain both demand and commodity components. The demand charge is payable each month regardless of the volume of gas actually purchased; the commodity charge is levied on each one thousand cubic feet of gas actually purchased. Prior to Opinion No. 258, ANR's commodity component encompassed, in addition to all of ANR's variable costs, 50 percent of the pipeline's fixed costs; the other 50 percent of fixed costs was assigned to the demand component of ANR's rates.[1]

While ANR's full requirements customers—those purchasing their entire gas supply from ANR—paid the commodity charge only on gas actually received, the pipeline's two partial requirements customers, MichCon and Michigan Gas Utilities Company (MGU), were subject to a "minimum bill" regime. They were obligated to pay ANR, in each contract year, an amount equal to the fixed-cost portion of the commodity rate[2] times the greater of (1) the volume actually purchased by the customer, or (2) a "minimum bill quantity" (MBQ) specified by contract. In fact, MGU's purchases did not fall below its MBQ, but MichCon's did, and by a considerable amount.[3]

MichCon therefore was paying, because of the minimum bill regime, a share of fixed costs on large volumes it did not take. This fact was reflected by ANR in the calculation of its then-current filed rates. Rates are determined by dividing the pipeline's cost of service by the estimated quan-

---

1. This 50/50 allocation conformed to the formula set by the Federal Power Commission in Atlantic Seaboard Corp., 11 F.P.C. 43 (1952). *See* ANR Pipeline Co., Opinion No. 258, 37 F.E.R.C. ¶ 61,263, at 61,731 & n. 4, 61,733 (1986).

2. FERC eliminated variable-cost minimum bills in Order No. 380, 27 F.E.R.C. ¶ 61,318 (1984). This court upheld FERC's decision in *Wisconsin Gas Co. v. FERC*, 770 F.2d 1144 (D.C.Cir.1985),

*cert. denied*, 476 U.S. 1114, 106 S.Ct. 1968, 90 L.Ed.2d 653 (1986).

3. In contract year 1982–83, for example, MichCon "purchased approximately 224 MMDth [million dekatherms] from ANR ... a figure substantially lower than the 280 MMDth fixed cost minimum bill level." Opinion No. 258, 37 F.E.R.C. at 61,760 n. 151.

tity of gas its customers are projected to buy. In calculating the fixed-cost commodity charge unit rate, ANR used MichCon's MBQ as that customer's estimated quantity. This yielded rates lower than those that would have obtained had ANR used MichCon's projected and actual gas purchases, for dividing the cost of service by higher volumes produces lower rates.

In Opinion No. 258, FERC addressed (1) the design for ANR's sales rates, and (2) ANR's minimum bill. The Commission directed ANR to use a "modified fixed variable" design for its rates; this design assigned to the demand component all fixed costs except return on equity and related income taxes, and fixed production and gathering costs. Complementing the new rate design, which assured ANR recovery of a greater portion—but not all—of its fixed costs, the Commission ordered elimination of ANR's fixed-cost minimum bill. *See* 37 F.E.R.C. at 61,749–51, 61,753, 61,-755. FERC ordered ANR to "file ... revised tariff sheets to reflect the determinations made in [Opinion No. 258]." *Id.* at 61,757.[4]

In its compliance filing ANR eliminated the fixed-cost minimum bill from its commodity charge, and it made a related change. In calculating the fixed-cost component of its new commodity rate, ANR replaced MichCon's MBQ, which ANR had used in its then-current rate filing, with the actual sales volumes ANR was projecting for that customer.[5] This replacement of a high MBQ with low projected volumes substantially boosted the per unit commodity rate.[6]

FERC rejected the compliance filing, principally on the ground that use of the lower projected volumes would result in an increase in sales rates not authorized by Opinion No. 258. *ANR Pipeline Co.*, 39 F.E.R.C. ¶ 61,232 (1987). "The upshot of the Commission's order was that ANR was required, for the moment, to continue relying on the volumes that had been applicable to calculating the minimum bill in calculating the fixed-cost component of its commodity rate." Brief for Respondent at 9.

The Commission stated its position more completely when ANR unsuccessfully petitioned for rehearing:

> In Opinion No. 258, the Commission ... did not authorize ANR to alter the billing determinants used to calculate the commodity rate, but stated that ANR's demand rate, as set forth in the modified fixed-variable rate design, assures ANR recovery of all fixed costs it should appropriately recover.... To allow ANR, at this time, to lower its fixed commodity quantity below that [currently on file] would be in direct conflict with Opinion No. 258. It would also conflict with the filed rate doctrine, which provides that no natural gas company may lawfully charge or collect a rate in excess of the rate properly on file and in effect. However, ANR may file for a rate increase to reflect the reduced volumes under section 4 of the Natural Gas Act.

*ANR Pipeline Co.*, 40 F.E.R.C. ¶ 61,067, at 61,204–05 (1987) (footnotes omitted). ANR petitioned for judicial review and also filed two new sets of tariff sheets, one continuing to use the lower projected sales vol-

---

**4.** Following an unsuccessful petition for rehearing, ANR Pipeline Co., Opinion No. 258–A, 38 F.E.R.C. ¶ 61,221 (1987), ANR filed a petition for review with this court which was later withdrawn.

**5.** ANR used the volume it had projected as actual sales to MichCon in computing the variable-cost part of the commodity charge in its then-current rate filing. With this change, the overall sales volume reflected in ANR's fixed-cost commodity rate design declined from 556.58 MMDth to 345.98 MMDth; the latter figure was the one that had been used to calculate ANR's variable-cost commodity rates. Joint Appendix (J.A.) at 290, 297.

**6.** ANR's effective fixed-cost commodity rate, prior to any changes included in its compliance filings, was 63.2 cents per dekatherm. J.A. at 282. ANR stated that if the various rate design changes required by Opinion 258 were implemented, and yet the minimum bill quantity were retained in fixed-cost commodity rate calculation, this rate would decline to 50.01 cents. J.A. at 263, 282. In contrast, ANR asserted, if the MBQ were eliminated from rate design, and the other changes were made, then the rate would be 79.12 cents. J.A. at 118, 262, 282.

**962**

umes for MichCon, the other retaining the higher MBQ. FERC accepted only the latter filing, *ANR Pipeline Co.*, 41 F.E.R.C. ¶ 61,174 (1987), and denied a motion for rehearing. *ANR Pipeline Co.*, 42 F.E.R.C. ¶ 61,017 (1988). ANR again petitioned for court review. We consolidated, and now rule on, the review petitions.[7]

## II.

Opinion No. 258 ordered ANR to file "tariff sheets to reflect the determinations made in this opinion." 37 F.E.R.C. at 61,-757. One of Opinion No. 258's basic determinations was that ANR's minimum bill "should be removed from the picture." Brief for Respondent at 8. In its initial compliance filing ANR reasonably read the Opinion to call for a complete excision, not one in which the minimum bill would go, but the MBQ would stay in the rate calculation.[8] Accordingly, ANR deleted both. *See supra* note 5 and accompanying text.

On receipt of ANR's filing, and observing that the lower projected volumes for MichCon significantly elevated the per unit commodity rate, the Commission decreed, effectively, that a shadow of the minimum bill should linger on "for the moment." Brief for Respondent at 9. In a ruling FERC now characterizes as "procedural," *id.* at 12, the Commission required ANR,

unless and until the pipeline files anew for a rate increase, "to continue relying on the volumes that had been applicable to calculating the minimum bill" in calculating the company's rates. *Id.* at 9; 40 F.E.R.C. at 61,205.

Why, ANR asks, is it reasonable for the Commission to order the minimum bill out to the extent that the pipeline could benefit from its use, by billing for "phantom minimum bill volumes," but still in to the extent that the phantom volumes burdened ANR by operating to reduce its rates? Initial Brief of Petitioner at 23. FERC has supplied no fair answer we can grasp. *Cf. Alabama Power Co. v. FCC*, 773 F.2d 362, 366 (D.C.Cir.1985) (flawed agency action cannot be shielded by imposing burden of proof on party challenging action).

■ The filed rate doctrine,[9] if we comprehend the Commission's position correctly, is rather a red herring in this case; FERC acknowledges that changes it orders prospectively in the proper exercise of its ratemaking powers, once those changes are reflected in compliance-filing tariff sheets, do not run afoul of the doctrine. Brief for Respondent at 20; *see Southern Natural Gas Co.*, FERC Docket Nos. RP 86–63–011, RP 86–114–006, RP 88–17–014 (Nov. 9, 1988) (allowing increased rates reflected in compliance filing, subject to refund); *Texas*

---

7. Customers of ANR, other affected enterprises, and public authorities intervened in support of respondent and have filed a joint brief. These intervenors are: City Gas Company, Madison Gas & Electric Company, Wisconsin Fuel & Light Company, Wisconsin Gas Company, Wisconsin Natural Gas Company, Wisconsin Power & Light Company, Wisconsin Public Service Corporation, Wisconsin Southern Gas Company, Michigan Consolidated Gas Company, Michigan Gas Utilities Company, North Central Public Service Company (a Division of Iowa Public Service Company), Association of Businesses Advocating Tariff Equity, Public Service Commission of Wisconsin, State of Michigan, and Michigan Public Service Commission.

8. We find nothing in Opinion No. 258 alerting ANR to any Commission view that the MBQ should remain in the picture. In addressing objections to elimination of minimum bills, the Commission "recognized that some partial requirements customers, relieved of their minimum bill obligations, might swing their purchases to a lower-priced pipeline." 37 F.E.R.C. at 61,751. FERC stated, however, that "[r]ate

increases are not necessarily a foregone conclusion if the pipeline can take other steps such as decreasing its unit fixed costs or increasing its sales." *Id.* The Commission further referred to the prospect of revenue generation "by transportation ANR may perform." *Id.* These comments indicate awareness and concern that minimum bill elimination might yield rate increases; but they contain no suggestion that a proper way to check against an increase is to keep sales volumes artificially high through retention of MBQ for rate design purposes. *Cf. Colorado Interstate Gas Co. v. FERC*, 791 F.2d 803 (10th Cir.1986) (FERC properly rejected a rate design modification in a compliance filing where rationality of rate structure left in place was not questioned), *cert. denied*, 479 U.S. 1043, 107 S.Ct. 907, 93 L.Ed.2d 857 (1987).

9. This doctrine "bars a regulated seller of natural gas from collecting a rate other than the one filed with the Commission and prevents the Commission itself from imposing a rate increase for gas already sold." *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 578, 101 S.Ct. 2925, 2931, 69 L.Ed.2d 856 (1981).

*Eastern Transmission Corp.,* 44 F.E.R.C. ¶ 61,318 (1988) (same, but without addressing refund prospect); *Columbia Gas Transmission Corp.,* 40 F.E.R.C. ¶ 61,300 (1987) (permitting increase to be collected prospectively, subject to review in pipeline's pending rate case).[10] Indeed, the Commission accepted a rate increase reflected in another part of ANR's Opinion No. 258 compliance filing; this increase resulted from the pipeline's implementation of the "modified fixed variable" approach, *see supra* p. 961, and the fundamental changes that approach necessitated in the demand charge.[11]

The Commission's position thus reduces to its insistence that Opinion No. 258 specifically authorized only a one-sided change. We earlier observed that ANR reasonably read the Opinion to permit total elimination of MichCon's MBQ. *See supra* p. 962 & n. 8. Nevertheless, we do not question the Commission's superior capacity to construe its own decisions. We cannot approve the Commission's construction, however, without assurance that the end product rests on reason, not simply on resistance to the result that thoroughgoing elimination of the minimum bill would "for the moment" yield a higher rate. We lack the requisite assurance that reason has prevailed here. *Cf. GUARD v. U.S. Nuclear Regulatory Comm'n,* 753 F.2d 1144 (D.C. Cir.1985) (rejecting as irrational NRC's interpretation of its own regulation).

In defense of the one-sided change, FERC and Intervenors tender various arguments. We summarize here purported justifications and state why we find the contentions unpersuasive. In one asserted justification, the Commission contrasts demand and commodity charges and correctly states that the former "matches rate design volumes and billing volumes so that a pipeline collects the applicable portion of fixed costs, no more and no less." Brief for Respondent at 18. "With respect to the commodity charge," however, "Commission policy is to introduce some risk into the picture, so that the pipeline's performance will affect its profits," and "[t]o this end, the pipeline files representative level of through-put volumes, which the Commission reviews." *Id.* at 18–19. We do not see how this featured contrast advances the rationality of FERC's position, for MichCon's artificially high MBQ appears not to be a "representative level."

But ANR "chose" the MBQ volumes it earlier filed for MichCon, FERC adds, and so should not be heard to assert, outside a new rate case, that those volumes are "too high in light of current billing levels." *Id.* at 19. ANR's "choice," however, was driven totally by the minimum bill then in place; if the MBQ volumes thus "chosen" are now too high, they have become so because FERC has ordered an end to the minimum bill, a choice made by the Commission, not by ANR.

Intervenors suggest that, unrelated to the minimum bill, ANR has been underestimating volumes, and has also been overestimating costs. Joint Brief of Intervenors at 32. The Commission similarly hints: "Sales projections used in the rate design for other customers may be well below actual volumes, even if the opposite is the case with Mich Con." Brief for Respondent at 16 n. 13 (also noting that an increase in transportation service may make up for any shortfall in ANR's sales vol-

---

**10.** The Commission properly rejects compliance-filing rate increases associated with rate design changes unrelated to the modifications FERC has ordered. *See* Panhandle Eastern Pipe Line Co., 34 F.E.R.C. ¶ 61,382 (1986); Western Gas Interstate Co., 32 F.E.R.C. ¶ 61,172 (1985); Wisconsin Power & Light Co., 29 F.E.R.C. ¶ 61,206 (1984); Consolidated Gas Supply Corp., 2 F.E.R.C. ¶ 61,288 (1978). To the extent *Panhandle* suggests rate increases may never attend a compliance filing, the suggestion appears inconsistent with Commission practice.

**11.** The Commission "inserted a new demand charge ... reflecting annual entitlement to service" (annual contract quantity or ACQ), and "decided ... that this charge should be put on a current footing, not on some historical basis." The Commission therefore "instructed ANR and its customers to renegotiate their old ACQ's to reflect current usage on ANR's system." Brief for Respondent at 18; *see* 37 F.E.R.C. at 61,746–47. This renegotiation "resulted in changes in rate determinants, and increased the rates to be billed to customers, both of which results were reflected by ANR in the compliance filing it made, and both of which were accepted by the Commission." Initial Brief of Petitioner at 27 (emphasis omitted).

umes). But the issue FERC has isolated in Opinion No. 258 is elimination of the minimum bill. The wider matters ultimately urged in respondent's and intervenors' briefs, including any refund entitlement for ANR's customers, are sub judice in ANR's rate cases currently before the Commission. *See ANR Pipeline Co.,* 41 F.E.R.C. ¶ 63,017 (1987) (initial decision). Those matters should receive comprehensive airing in that context, and we do not preview them in this proceeding.

CONCLUSION

ANR's compliance filing attempted to remove the minimum bill from the picture, leaving no remnant in place. The Commission has not rationally explained why that filing does not comport with Opinion No. 258's instruction that ANR should no longer retain "any minimum bill at all." It is no doubt within the Commission's domain to decide that the minimum bill shall be eliminated; we require only that in ordering when and how such a decision is to be implemented, the Commission act in a manner it can demonstrate to be reasonable. Accordingly, we vacate the orders under review and remand this case to the Commission for further consideration consistent with this opinion.

*It is so ordered.*